UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

NEW HAITIAN ALLIANCE CHURCH
OF BOYNTON BEACH, INC.

Case No. 10-39163-PGH
Chapter 11

Debtor.
_____________________________/

**MOTION FOR RELIEF FROM STAY, OR IN THE ALTERNATIVE, FOR ADEQUATE PROTECTION**

**NOTICE: ANY INTERESTED PARTY WHO FAILS TO FILE AND SERVE A WRITTEN RESPONSE TO THIS MOTION WITHIN FOURTEEN (14) DAYS AFTER THE DATE OF SERVICE STATED IN THIS MOTION SHALL, PURSUANT TO LOCAL RULE 913(f), 4001-1(c), AND ADMINISTRATIVE ORDER 98-7, BE DEEMED TO HAVE CONSENTED TO THE ENTRY OF AN ORDER IN THE FORM ATTACHED TO THIS MOTION. ANY SCHEDULED HEARING MAY THEN BE CANCELLED.**

THE ALLIANCE DEVELOPMENT FUND, INC., a Colorado nonprofit corporation ("ALLIANCE" or "Movant"), secured creditor to the Debtor, NEW HAITIAN ALLIANCE CHURCH OF BOYNTON BEACH, INC., a dissolved not for profit Florida corporation ("NEW HAITIAN" or "Debtor"), and an interested party in these proceedings, files this Motion for Relief From Stay, or in the alternative, for adequate protection, and states as follows:

**Background**

1. ALLIANCE is a secured creditor of NEW HAITIAN, the Debtor and Debtor-in-Possession in these proceedings (the "Debtor"), in the principal amount of $1,350,000.00, resulting from the Debtor's loan to it by ALLIANCE for the modified amount of $1,350,000.00. This loan was evidenced by that certain Promissory Note dated as of August 18, 2009 (as extended and modified to date, the "Note"), executed by NEW HAITIAN and made payable to the order of ALLIANCE in the original principal amount of $1,350,000.00. The Note was

secured, in part, by that certain by that certain Mortgage dated as of July 7, 1999 (the "Original Mortgage"), from NEW HAITIAN as Mortgagor in favor of ALLIANCE as Mortgagee, recorded in Official Records Book 11222, at Page 1662 of the Public Records of Palm Beach County, Florida, which Original Mortgage encumbers the land and property more particularly described in Exhibit "A" to that instrument. Said Original Mortgage was later modified by that certain First Modification of Mortgage dated as of October 3, 2002 from NEW HAITIAN as Mortgagor in favor of ALLIANCE as Mortgagee, recorded in Official Records Book 14316, at Page 1093 of the Public Records of Palm Beach County, Florida (the "First Mortgage Modification").

2. The Note was also secured in part by an additional, interim Mortgage ("Second Mortgage") from NEW HAITIAN as Mortgagor in favor of ALLIANCE as Mortgagee, recorded in Official Records Book 18058, at Page 361 of the Public Records of Palm Beach County, Florida. Said Second Mortgage was later modified by that certain Modification of Mortgage dated as of September 16, 2008 from NEW HAITIAN as Mortgagor in favor of ALLIANCE as Mortgagee, recorded in Official Records Book 22875, at Page 1 of the Public Records of Palm Beach County, Florida (the "Second Mortgage Modification").

3. Both the Original Mortgage and the Second Mortgage, as modified and amended, encumbered certain real and personal property more particularly described therein, and were later consolidated, amended and restated by means of that certain Consolidated, Amended and Restated Mortgage and Security Agreement dated as of August 18, 2009 (the "NEW HAITIAN Mortgage"), recorded in Official Records Book 23413, at Page 1950 of the Public Records of Palm Beach County, Florida. A true and correct copy of Movant's supporting affidavit is attached hereto as **Exhibit "A"**. A true copy of the Note is attached to Movant's supporting

affidavit as Exhibit "A"; a true and correct copy of the NEW HAITIAN Mortgage is attached to Movant's supporting affidavit as Exhibit "B". The related real property subject to the NEW HAITAIN Mortgage is located at 400 Hoadley Road, Boynton Beach, Palm Beach County, Florida 33426 (the "Subject Property"), and is and since the date of filing has been owned by NEW HAITIAN.

4. NEW HAITIAN was required to pay Movant monthly interest payments under the Note, but NEW HAITIAN failed to pay the sums due for October, 2009, November, 2009 and December, 2009, which such failures constituted Events of Default under the Note and NEW HAITIAN Mortgage.

5. Movant demanded payment of the outstanding debts owing as of December 30, 2009 ("Initial Demand Letter"), including the unpaid interest payments referenced above, and Movant further warned NEW HAITIAN that if such Events of Default were not cured by payment by January 15, 2010, Movant might exercise all rights and remedies available to them under the Loan Documents, and upon NEW HAITIAN's lack of compliance with this demand, did in fact accelerate the full amount due and owing under the Note and Loan Documents ("Acceleration Letter"). True copies of the Initial Demand Letter and Acceleration Letter are attached to the Movant's affidavit in support hereof as Composite Exhibit "C".

6. The above events then gave rise to the filing of a state court foreclosure proceeding by ALLIANCE against the Debtor, that resulted in the entry of a Summary Judgment of Foreclosure on or about July 8, 2010, a true copy of which is attached to Movant's affidavit in support of this Motion as Exhibit "D".

7. Then, on September 27, 2010 the instant case was filed by Debtor. The filing of this estate constituted an additional Event of Default under the subject Mortgage. In addition, the

Debtor was subsequently the subject of a termination of denomination affiliation with Movant's affiliate, which constituted a separate Event of Default under the Note of Movant, which is not subject to cure, a true copy of such notification to the Debtor being attached to Movant's affidavit in support of this Motion as Exhibit "E".

8. Under Schedule A to the Debtor's filings, the Debtor has acknowledged the value of the Subject Property herein is far less than the sums owed to Movant as secured creditor thereto. The relevant portion of the Debtor's Schedule A is attached to the Movant's affidavit herein as Exhibit "F".

5. The Debtor clearly has no equity in the Subject Property based on the value of same as declared by the Debtor, compared to the principal sums due Movant herein. This fact is supported by Movant's appraisal, attached to Movant's affidavit in support of this motion as Exhibit "G" which shows an appraisal value of $1,100,000.00 for the Subject Property as of September 27, 2010. Since the value of the Subject Property is well below the sums owed to Movant, this clearly shows there is no equity in the Subject Property in the Debtor. Thus, the Subject Property is not necessary for any reorganization of the Debtor.

6. Further, as time progresses, the value of the Subject Property continues to degrade and decrease due to its being retained and used by the Debtor, who has otherwise failed to pay Movant for sums owed pre- and post-petition. The representative of the Debtor that decided to file this case is under investigation for wrongdoing that is part of the public forum, and he has been removed as a practicing minister by the authority under which the Debtor had been operating as an on-going church. The fact that the Debtor has not even filed tax returns over the last three years is an indication of the bad faith filing this case represents.

7. Costs of administration of the Subject Property are such that it cannot be

effectively managed and operated by the Debtor since they have no funds with which to conduct such operations while also paying the sums to which Movant is entitled in the form of adequate protection payments due thereto. Taxes and insurance are frequently unpaid or delinquent, subjecting Movant to risk of loss of value of its secured collateral.

8. Since NEW HAITAIN defaulted in its obligations to Movant, and the entire balance under the Note has been accelerated, Movant is entitled to all relief presently sought, forthwith, especially since Movant prior to the estate's filing made a proper and timely demand for such payment and prosecuted its claims to a judgment in the state court, and as a result of the continued use of the collateral by the Debtor without payment, such that Movant's interest in the collateral is not being adequately protected.

9. As stated above, the Debtor has been the subject of a termination of denomination affiliation with Movant's affiliate. This is an event that constitutes a separate, incurable Event of Default under the Note of Movant. There is no Plan of Reorganization or other matter that can possibly see the subject obligation restored to a proper status. As a result, this Motion must be granted in full.

10. Further, Movant did not and has not consented to the use of its cash collateral by the Debtor in any fashion and no agreement thereto has ever been reached.

11. Movant also hereby notifies the Debtor that it is required to comply fully with 11 U.S.C. Section 363(c), including, without limitation, the requirement that it segregate and account for all of Movant's cash collateral which is in the Debtor's possession or control as of the date of the filing of the Debtor's bankruptcy case, and all cash collateral coming into the Debtor's possession or control thereafter.

12. The Debtor has not contacted Movant to obtain approval for use of the cash

collateral nor has the Debtor made any provisions to adequately protect Movant's interest in the Subject Property and related revenue thereto. By reason of the continued use and possession of the Subject Property without paying any sums accruing after the date of commencement of this case, the Debtor has failed and will continue to fail to provide ALLIANCE with adequate protection of its secured interest in the Subject Property. Thus, relief from the stay should be granted, or alternatively, all sums accrued since filing of the estate and on an ongoing basis should be paid to Movant forthwith, together with fees and costs associated with such efforts to recover said relief.

**Legal Argument**

13. Immediate Stay Relief is appropriate in this case under 11 U.S.C. § 362(d)(2) of the Bankruptcy Code.

14. The Debtor has listed the Subject Property as being valued at a sums much lower than those sums reflected as being owed to ALLIANCE as a secured first mortgage lender, as evidenced by the Debtor's Schedule A, attached to Movant's supporting affidavit.

15. The status of revenue, accounts and the other personal property to which Movant is secured remains tenuous, and it would be against fundamental fairness and the rights of Movant to permit this Debtor to use the benefits and gain derived from the Subject Property, secured only to Movant, to benefit other creditors that have no claims or rights against the owner and mortgagor. This is especially true given the Debtor has listed only a public utility as the sole other creditor in this estate.

16. It is thus evident the effort to "hide" the secured collateral of Movant from the Movant cannot stand and that it should be afforded the relief sought hereunder.

17. Further, the Debtor cannot claim Movant is "over secured". Their own schedules

and the appraisal denote the lack of value of the Subject Property to cover the debt owed to Movant.

18. If stay relief is not granted, it is evident the secured debt will continues to grow daily in such a way that the eventual claim of this Movant against the Debtor, will blossom even more should the Subject Property not be taken back and foreclosed upon, thus reducing the potential claim in the instant estate. Denying the stay relief here would actually impair all other creditors of the actual estate of this Debtor. Further, the default herein under the secured obligation is of an incurable nature, such that no reorganization will ever be viable.

19. At the end of the day, it is evident that the fair market value of the Subject Property will at some point, if it has not already, "cross the rising trajectory" of Movant's secured claim.

20. Based upon the foregoing, Movant's stay relief motion should be granted, since the Debtor has no equity in the Subject Property, or, alternatively, since there has been no provision for the adequate protection of Movant, such that the Debtor should be compelled to pay all such protection over to Movant forthwith and thereafter during the pendency of this estate.

21. There is due, owing and unpaid to ALLIANCE under the Note, as established under the Affidavit of Movant's representative, filed in support hereof, and the Indebtedness Worksheet, attached hereto as **Exhibit "B"**, in support hereof, as of October 14, 2010, the following amounts:

| | |
|---|---|
| Unpaid Principal: | $ 1,350,000.00* |
| Arrearages: | |
| Interest Due to 02/16/10: | $ 40,050.00 |
| Appraisal Fee: | $ |
| Miscellaneous Fees Due: | $ 3,045.65 |

| | |
|---|---|
| TOTAL DUE AS OF 02/16/10: | $ 1,393,095.65** |
| Per diem Thereafter: $641.10 | |
| Interest, Fees From 02/16/10 to 9/27/10 (date of estate filing): | $ 142,965.30 |
| TOTAL PAST DUE: | $ 1,536,060.95** |
| Interest, Fees From 09/27/10 to 10/14/10: | $ 10,898.70 |
| **TOTAL:** | $ **1,546,959.65**** |

*Interest continues on the above sums to accrue from acceleration at the default rate of eighteen percent (18%) per annum.

(**These figures do not include additional sums due for attorneys' fees and costs incurred pre- and post-petition on the loan for which Debtor is responsible. Interest accrues at the rate as set forth above, together with other charges and advances that may be incurred by ALLIANCE, including, but not limited to, such additional attorneys' fees and costs incurred as to this case for which Debtor is responsible).

22. As stated above, Movant believes the automatic stay imposed under law with respect to the Debtor should be lifted, as the Debtor has no equity in the Subject Property, and the default herein under the secured obligation is of an incurable nature, such that no reorganization will ever be viable.

23. Movant thus seeks the Court to grant relief from any such stay in favor of Movant so it can pursue its state court remedies.

24. The Debtor has already determined by its own Schedule A that the value of the Subject Property is well below the sums owed to Movant. This clearly shows there is no equity in the Subject Property in the Debtor. Thus, the Subject Property is not necessary for any reorganization of the Debtor, a single asset entity.

WHEREFORE, ALLIANCE requests that this Court enter an Order lifting the Automatic Stay and for such other relief sought hereunder, including without limitation the entry of an order

to restrict the Debtor's use of Movant's cash collateral and to require the Debtor to segregate, account for and turnover to Movant all cash collateral received by the Debtor and for such other relief as this court deems just and proper.

Pursuant to Local Rule 9073-(D), Movant's counsel has contacted adverse parties to attempt to resolve the matter without hearing.

Dated: December 14, 2010

**CERTIFICATE OF ATTORNEY**

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

s/ James W. Carpenter
JAMES W. CARPENTER, ESQ.
Fla. Bar No.: 654256
Email: jwc@angelolaw.com
ANGELO & BANTA, P.A.
Attorneys for ALLIANCE
515 East Las Olas Blvd., Ste. 850
Fort Lauderdale, FL 33301
Tel: 954-766-9930
Fax: 954-766-9937